## THE PEOPLE *v.* BIRD.

### APPEAL from the District Court of San Juan.

No. 52.—Decided February 27, 1904.

APPEAL IN CASSATION.—In a writing taking an appeal in cassation, the article of the law which authorizes the same and the laws which are alleged to be violated should be cited with precision and clearness.

CALUMNIES AND INSULTS TO AUTHORITY.—When statements contained in an article published in a newspaper are calculated to calumniate, outrage and insult the judges of a court, the crime of calumny and insult to authority prescribed in article 265 of the former Penal Code is committed.

CRIMINAL LIABILITY.—The fact that the crime committed by the accused may involve the commission of another crime of a lesser degree, does not constitute ground of acquittal of the crime with which the accused is charged.

JURY TRIAL—FELONY AND MISDEMEANOR—LIBEL.—A jury trial can only be granted in cases of felony, under existing law, and the benefits thereof are not made extensive to cases of libel or any other misdemeanor.

ID.—If a jury trial is not requested in due time it shall be deemed to have been waived.

APPEAL—JUDGMENT—ERRORS OR DEFECTS OF A TECHNICAL CHARACTER.—In

ó defectos de carácter técnicos, que no afecten los derechos substanciales del acusado.

CASACIÓN POR QUEBRANTAMIENTO DE FORMA.—Los errores de procedimiento que pueden dar lugar al recurso de casación por quebrantamiento de forma, son errores de carácter substancial y dicho recurso sólo procede en los casos enumerados en los Artículos 911 y 912 de la antígua ley de Enjuiciamiento Criminal.

CIRCUNSTANCIAS AGRAVANTES.—Constituye circunstancia agravante, según el antíguo Código Penal, la realización del delito por medio de la imprenta.

APELACIÓN.—ERRORES DE PROCEDIMIENTO.—EXCEPCIONES.—Los errores de procedimiento que no hubieren sido objeto de excepción en su oportunidad, no pueden ser discutidos en la apelación.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Guzman Benitez* (Juan).

Abogado del apelado: *Sr. del Toro* (Fiscal).

EL JUEZ ASOCIADO SR. MACLEARY emitió la opinión del Tribunal.

En el día 13 de Febrero de 1902, en el San Juan News, un periódico que se publica en la Capital de Puerto Rico. y del cual Hobart S. Bird está designado en el mismo como editor y director, apareció el siguiente editorial principal:

### EL INCIDENTE DE PALMER.

"En esta edición publicamos una carta abierta de Don Santiago Palmer, distinguido y respetado notario ó abogado, en la que demuestra la vil y cobarde manera con que el Tribunal de Distrito de San Juan quiso utilizar sus facultades públicas para manchar el honor y la reputación de un ciudadano de carácter tan íntrego y elevado como el de Santiago Palmer.

"Para los Puertorriqueños, la reputación del hombre que fué tan injustamente atacado y la del Presidente del Tribunal del Distrito, Ramos, el principal promotor é inspirador de todas las iniquidades tramadas y puestas en práctica por aquél Tribunal, son bien conocidas, pero los americanos y extranjeros no pueden tan fácilmente distinguir lo bueno y lo malo, entre la muchedumbre puertorriqueña.

"Por esta razón es que se hace necesario, como dice acertadamente el Sr. Palmer, que se practíque una investigación acerca de la ignominiosa conducta del Tribunal de Distrito, al dictar contra

rendering a judgment, the court should not take into consideration errors or defects of a technical character which do not affect the substantial rights of the accused.

CASSATION FOR ERROR OF PROCEDURE.—Errors of procedure which may give rise to an appeal in cassation for error of procedure are errors of a substantial character, and said appeal will only lie in the cases enumerated in articles 911 and 912 of the old Law of Criminal Procedure.

AGGRAVATING CIRCUMSTANCES.—The commission of a crime by means of the press constitutes an aggravating circumstance according to the old Penal Code.

APPEAL—ERRORS OF PROCEDURE—EXCEPTIONS.—Errors of procedure which have not been duly excepted to cannot be considered on appeal.

The facts are stated in the opinion.

Mr. Guzmán Benítez (Juan), for appellant.

Mr. del Toro, Fiscal, for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

There appeared, on the 13th day of February, 1902, printed in "The San Juan News," a paper published in the capital city of Porto Rico, and of which Hobart S. Bird is designated therein as editor and proprietor, the following leading editorial, to wit:

"THE PALMER INCIDENT.

"In this issue we print an open letter by Mr. Santiago Palmer, the distinguished and respected notary and lawyer, in which he shows the contemptible and cowardly manner in which the San Juan District Court attempted to use its official power to stain the honor and reputation of such an unimpeachable and lofty character as that gentleman.

"Among the native people of Porto Rico the character of the man who was so unjustly attacked and the character of the president of the court, Judge Ramos, the chief mover and leading spirit in all of the iniquitous schemes and devices instituted and carried into practice by that court, are well known, but others, Americans and foreigners, cannot so easily distinguish between the good and the bad in the Porto Rican ranks.

"It is in this way that it becomes necessary, as Mr. Palmer says, to publicly make an explanation of the disgraceful conduct of the district court, which resulted in his conviction in the lower tribunal

aquél sentencia condenatoria por el delito de imprudencia temeraria, y cuya sentencia ha sido revocada por el Tribunal Supremo.

"Tenemos Jueces en los Tribunales, tan repletos de animosidad política, tan ciegos, y de instintos tan perversos para aniquilar á los de contrarias opiniones, y estimular á sus correligionarios, que ningún sacrifico de la justica, de la ley ó del derecho, es suficientemente grande para detenerles en la ejecución de sus nefandos propósitos.

"Pónganse ustedes á recapacitar, honrados lectores, acerca de los fines con que estos irredimidos tunantes se habían puesto en connivencia. Ellos, funcionarios republicanos, que ocupan altos puestos de confianza; que no solamente son corruptos en su vida pública, sino inmorales é indecentes en su vida privada, se atreven acusar como delincuente y sentenciar á un ciudadano que está muy por encima de ellos, toda vez que su conducta queda libre de todo reproche.

"Véase el motivo porque su buen nombre fué echado á correr. Resulta que dicho caballero en sus funciones de notario, certificó que cierto documento habia sido firmado en su presencia; lo cual fué cierto. Más tarde se vino en conocimiento de que los nombres de las personas que aparecian firmando el documento eran supuestos, pues aquéllas no dieron al notario su verdadero nombre. Con un pretexto tan trivial como éste, se procesó al notario, el Tribunal le juzgó por "imprudencia temeraria" y por ello le sentenció á cumplir condena en la cárcel.

"Valiéndose de esta acusación inmotivada, y como en son de guerra, los mismos republicanos que no podrían igualarse al acusado, se aproximan á la Mansión Ejecutiva y deploran ante el Gobernador y otros oficiales que existieran tales escándalos.

"Por supuesto que establecida la apelación, fué sobreseida la causa y el Sr. Palmer declarado inocente. Así pues la única manera de que estos sucesos ignominiosos no puedan repetirse, es la de renovar completamente el sistema judicial, separando de sus puestos á hombres como Ramos y Rossy, en particular".

Competentes funcionarios procedieron inmediatamente á la demanda del editor y director de dicho periódico, por motivo de la citada publicación, bajo el Código Penal Español, entonces vigente, designando la ofensa "injurias y calumnias".

Después de la investigación usual ante el Juez Municipal,

for 'temporary imprudence,' but which conviction was promptly reversed by the Supreme Court.

"And so we have judges on the bench so overflowing with political animosity, so blinded with an unnatural desire to wreck their poliical opponents, and to emulate their political friends, that no sacrifice of justice or law or right is too great to accomplish their nefarious schemes.

"Stop to consider, fair reader, what these unredeemable rascals have been conniving together for, Republican officials in high positions of dignity who are not only corrupt in public office, but immoral and indecent in private life, dare to charge and convict as criminal a citizen who cannot be classed with them, for he is beyond reproach.

"Using this trumped-up charge as a battle club for political purposes, prepared and initiated by the Republicans themselves, who are not fit to associate with the accused, members of the party approach the executive mansion and deplore to the Governor and other officials that such scandals should exist.

"This is why his name was scandalized. He acted as the notary, and certified that a certain document was signed in his presence, which was true. Later it turns out that the persons signing the document made false representations and deceived the notary as to their true identity.

"Upon such a flimsy pretense as this, a charge was brought against the notary, and the court convicted him of 'temporary imprudence' in not detecting the fraud, and for this, sentenced him to serve a term in prison. Upon appeal, of course, the case was reversed and Mr. Palmer was declared guiltless.

"The only way that such disgraceful occurrences can be checked is by a thorough renovation of the judiciary, and a prompt dismissal from office of such men as Ramos and Rossy in particular."

Steps were immediately taken by the proper authorities to prosecute the editor and proprietor of the newspaper for this publication, under the Spanish Penal Code then in force, the offense being designated therein as "injurias y calumnias" (injuries and calumnies).

After the usual investigation before the municipal judge,

el Fiscal de la Corte de Distrito, en 8 de Marzo de 1902, presentó una acusación formal contra el demandado, que en el Código se llama, "acusación provisional".

La Corte de Distrito de San Juan, contra la cual fué dirijido dicho artículo editorial, se componía, en el tiempo de la citada publicación, del Hon. Juan R. Ramos, Hon. Juan Morera y Martinez y Hon. José R. F. Savage. Después, el Juez Savage renunció, y los Jueces Ramos y Morera declinaron conocer de la causa, alegando que tenián cierto interés en el resultado de la misma. El Hon. Henry F. Hord fué nombrado para sustituir al Juez Savage, y tomó posesión del destino en Mayo de 1902, encargándose de dicha causa. El Juez Ramos renunció después, y el Hon. Juan J. Perea fué nombrado para sustituirlo. El Hon. Juan Hernández Lopez fué nombrado Juez Especial para desempeñar el cargo del Juez Morera, quien se consideró inhabilitado.

La vista tuvo lugar en el día 18 de Septiembre de 1902, y después de debida consideración, la Corte sentenció al acusado, como autor del delito de injurias á la autoridad, realizado por medio de la imprenta, á la pena de cuatro meses y un día de arresto mayor, para ser extinguida en la cárcel pública de la Ciudad de San Juan; suspensión de todo cargo y derecho del sufragio durante el tiempo de la condena y al pago de las costas.

Contra esta sentencia el demandado interpuso recurso de casación para ante la Corte Suprema de Puerto Rico, y en el día 15 de Junio de 1903, después de mucha discusión por parte de los abogados, pro y contra, esta Corte dictó sentencia revocando la del Tribunal de Distrito, reenviando la causa al mismo para nuevo juicio. La decisión de la Corte Suprema fué fundada en las irregularidades del procedimiento, sosteniendo, tres de los Jueces, que el hecho de no haber notificado al demandado el nombramiento del Juez especial, Sr. Hernández López, era una infracción de ley de suficiente gravedad para hacer nula la sentencia, y sostenien-

the *Fiscal* of the District Court, on the 8th of March, 1902, presented a formal information against the defendant, which is called, under the Code, a "provisional accusation."

The District Court of San Juan against whom this editorial article was directed was, at the time of publication, composed of Hon. Juan R. Ramos, Hon. Juan Morera y Martínez and Hon. José R. F. Savage. Later Judge Savage resigned, and Judge Ramos and Morera declined to sit in the case, alleging that they had an interest in the result. Hon. Henry F. Hord was appointed to succeed Judge Savage, and qualified in May, 1902, taking charge of the case. Judge Ramos afterwards resigned, and Hon. Juan J. Pera was appointed in his place. Hon. Juan Hernández López was appointed as a special judge to sit in the place of Judge Morera, who deemed himself to be disqualified.

The case came on for trial on the 19th day of September, 1902, and the court, after proper consideration, unanimously sentenced the accused, as the author of the crime of injury and calumny against authority, made in writing, and with publicity, to the penalty of four months and one day of imprisonment, to be served in the public jail of the city of San Juan, and to be suspended from all offices and the right of suffrage during the time of his condemnation, and to the payment of costs.

From this judgment the defendant in due time took an appeal to the Supreme Court of Porto Rico, and on the 15th day of June, 1903, after much discussion on the part of lawyers pro and con, a judgment was rendered by this court reversing the judgment of the district court, and remanding the case for new trial. The decision of the Supreme Court was founded upon irregularities in the proceedings, three of the justices holding that the fact that no proper notice had been given to the defendant of the appointment of the special judge, Hernández, was a sufficiently grave violation of the law to annul the judgment, and two of the justices holding that Special

do dos de ellos que el Juez especial, Sr. Hernández López, no
habia sido propiamente nombrado, por no haberse hecho el
nombramiento por el Gobernador y confirmado por el Consejo Ejecutivo, y que por ese motivo la sentencia era irregular, debiendo revocarse la misma; pero estando todos de
acuerdo en reenviar el caso á la Corte de Distrito, para
nuevo juicio, de acuerdo con la ley.

Cuando se celebró el nuevo juicio en la Corte de Distrito,
dicho cuerpo se componía del Hon. Juan Morera Martínez,
el Hon. Frank H. Richmond, y el Hon. José Tous Soto. Recusándose otra vez el Juez Morera, el Sr. Angel García y
Veve, Juez especial de Distrito debidamente constituído en
virtud de su nombramiento por el Gobernador como tal,
ocupó dicho sitio para el juicio de la causa.

Por providencia del día primero de Octubre de 1903, se
ordenó que el demandado fuera citado para que compareciera ante la Corte á contestar la acusación presentada contra él, y para señalar día para la vista. En esta providencia
se expuso que desde el primero de Julio de 1902 había estado
vigente una nueva ley de Enjuiciamiento Criminal, pero
aparece que ninguna tramitación se ha hecho de acuerdo con
aquella ley, excepto la acusación, la alegación de inculpabilidad y el haberse señalado día para la vista, que son sustancialmente los mismos procedimientos empleados de
acuerdo con la Ley de Enjuiciamiento Criminal anterior, y
Orden General No. 228 de 23 de Diciembre de 1899.

La providencia referida, con la omisión de las palabras
preliminares y las firmas, á la letra dice así:

"*Resultando*: que el Tribunal Supremo anuló la sentencia decretada en esta causa, y todo lo actuado desde la acusación fiscal y
ordenó que se celebrara nuevo juicio con arreglo á la ley.

"*Resultando*: que hoy está vigente desde el 1 de Julio de 1902, y
después de la instrucción de esta causa, una nueva ley procesal.

*Cítese* al acusado, Hobart S. Bird, para que comparezca ante el
Tribunal el día doce del corriente á las nueve de la mañana y oiga la

Judge Hernández had not been properly appointed, not having been nominated by the Governor and confirmed by the Executive Council, and that on that account the judgment was irregular and should be reversed; but all agreeing in remanding the case to the district court for a new trial in accordance with law.

When the case was again brought before the district court, that body was composed of the Hon. Morera Martínez, Hon. Frank H. Richmond, and Hon. José Soto. Judge Morera again recusing himself, Señor Angel García Veve, who is the special district judge regularly constituted by holding an appointment from the Governor as such, took his place upon the bench for the trial of this case.

On the 1st day of October, 1903, the defendant cited to appear before the court in order to plead to the accusation brought against him, and that a day might be set for the trial. In the order requiring this it is stated that a new law of criminal procedure has been in force since the 1st of July, 1902, but no proceedings seem to have been taken under that law, except the arraignment, pleading not guilty and setting the day for trial, which are substantially the same formalities practiced under the prior Code of Criminal Procedure, and General Order No. 223 of December 23, 1899.

The order referred to, omitting the introductory words and the formal signatures, reads as follows:

"Finding: That the Supreme Court annulled the sentence pronounced in this case, and all the proceedings taken after the accusation of the *Fiscal,* and ordered a new trial, in accordance with the law.

"Finding: that a new law of procedure is in force, beginning the 1st of July, 1902, and after the hearing of this case.

"Let the accused, Bird, be notified so that he may appear before

acusación fiscal (antes conclusiones provisionales) y conteste dicha acusación con arreglo al Código de Enjuiciamiento Criminal vigente y para señalar día para el juicio''.

De consiguiente el demandado compareció, le fué leida la acusación, rehusó que se le nombrara abogado, y alegó su inculpabilidad, y se señaló el día 20 del citado Octubre, ó sea ocho días después, para el juicio.

En el día 19 del propio Octubre, el Sr. Don Juan de Guzmán Benítez compareció como abogado defensor del demandado Bird, y presentó una alegación en su favor, en forma de moción, reclamando juicio por jurado, y exponiendo razones por las cuales el demandado no había pedido el jurado, según los requisitos dél estatuto, en el mismo día ó antes de leérsele la acusación. En el día 20 de Octubre la Corte tomó en consideración este alegato del demandado, y todos los estatutos, á que se refiere, y el mismo se desestimó en todas sus partes. Entonces el demandado presentó una moción pidiendo que se anulase la acusación, que á su vez fué desestimada por la Corte, y se procedió á la celebración del juicio, ofreciendo el Fiscal evidencia para probar la acusación. El demandado no ofreció prueba alguna en favor suyo, y la Corte procedió de acuerdo con el antíguo Código á la votación en la causa, declarando al demandado culpable de acuerdo con la acusación, sentenciándolo á dos meses y un día de arresto mayor, según pidió el Fiscal, y al pago de todas las costas.

Como esta pena es menor que la impuesta por la Corte en el primer juicio, es de observarse que en el primer juicio, en la Corte de Distrito, el demandado fué convicto y sentenciado á cuatro meses y un día de arresto mayor; compareciendo el acusador privado y pidiendo á la Corte que se aumentara el castigo pedido por el Fiscal en su acusación provisional. En el segundo juicio no compareció el acusador privado, y el juicio fué celebrado y concluído de acuerdo solamente con la acusación provisional del Fiscal, que sola-

the court on the 12th day of the current month at nine o'clock a. m. to hear read the accusation of the *Fiscal* (provisional conclusions), in accordance with the law in force and to set a day for the trial.''

Accordingly the accused appeared, was arraigned, refused to have counsel appointed for him and pleaded not guilty; and the case was set down to be tried on the 20th day of the current month, eight days later.

On the 19th of October, 1903, Mr. Juan de Guzmán Benítez appeared as attorney for the defendant, Bird, and filed a pleading in his behalf in the nature of a motion, claiming a jury trial and setting forth the reasons why the defendant had not demanded the jury, according to the requirements of the statute, on or before the day of his arraignment. On the 20th of October the court took into consideration this plea of the defendant, and all the statutes to which it referred, and the same was in all parts overruled. Thereupon the defendant presented a motion to quash the indictment, which was in turn overruled by the court, and the trial proceeded, the *Fiscal* offering evidence to prove the accusation. The defendant offered no evidence in his own behalf, and the court proceeded in accordance with the old code to vote upon the case, finding the defendant guilty according to the information and sentencing him to two months and one day of imprisonment, as demanded by the *Fiscal,* and to the payment of all costs.

As this punishment is a reduction of that imposed by the court on the first trial it may be observed that on the first trial in the district court the defendant was convicted and sentenced to four months and one day of imprisonment; the private prosecutor appearing and moving the court to increase the punishment demanded by the *Fiscal* in his provisional accusation. On the second trial the private prosecutor failed to appear and the trial was conducted and concluded on the provisional accusation of the *Fiscal* alone, who only demand-

mente pidió la pena de dos meses y un día. El aumento se hizo en el primer juicio por circunstancias agravantes, que no aparece haber sido alegadas en el segundo juicio. La pena parece haber sido bien leve y tan moderada como podría esperar un hombre culpable. No se alega ninguna exageración con respecto á la misma.

Contra esta sentencia de la Corte de Distrito, el demandado Bird, interpuso en debida forma, recurso de apelación por quebrantamiento de forma para ante este Tribunal, en 24 de Octubre de 1903. El abogado defensor funda su apelación en el segundo párrafo del Artículo 912 del Código de Enjuiciamiento Criminal Español, alegando que el Tribunal de Distrito, en su sentencia, no habia decidido todos los extremos que se habían alegado en su favor. Además alegó infracción de ley, fundándose en el primer párrafo del Artículo 848, el primer párrafo del Artículo 849, el Artículo 850, y el último párrafo del Artículo 853, en relación con el párrafo 8 del Artículo 848, respecto á la providencia dictada por la Corte en su primera moción presentada en favor del demandado, en el juicio oral, preceptos todos del Código de Enjuiciamiento Criminal.

Dichos artículos admiten recursos contra sentencias firmes cuando el Tribunal haya cometido un error en la calificación del delito y mencionan otras materias, que no se relacionan con el presente caso y que después fueron abandonadas por el alegato presentado en esta Corte. Parece haber sido la costumbre, en los asuntos de casación, mencionar todas las secciones de la ley que de manera alguna pudieran relacionarse con el asunto, por buena precaución, en vista de la regla contenida en los estatutos, que prescribe que si no se especifica el título y la sección del estatuto que hayan sido infringidos, la Corte desatendería el error que se alegase. (Véase el antíguo Código de Enjuiciamiento Criminal, Artículo 874.) Parece que se ha seguido esta antígua costumbre al interponer el presente recurso de apelación.

ed a punishment of two months and one day. The increase was made on the first trial on the ground of aggravating circumstances, which do not seem to have been alleged on the second trial. The punishment appears to have been quite mild and as low as any guilty man could hope to obtain. No complaint is made of any exaggeration in this respect.

From this judgment of the district court against him the defendant, Bird, prosecuted his appeal in proper form to this court on the 24th of October, 1903. Counsel bases his appeal on the second paragraph of article 912 of the Spanish Code of Criminal Procedure, alleging that the district court in its judgment had not decided all the points which had been made in his defense. He further alleged a breach of the old Law of Criminal Procedure, alleging that the district court in its 1, and article 849, paragraph 1, and article 850, and the last paragraph of article 853, taken in connection with paragraph 8 of article 848, in respect to the order dictated by the court on his first motion, presented on behalf of the defendant at the trial, alleging all of these to be provisions of the said Code of Criminal Procedure.

These articles provide for appeals in final judgments when the court has made an error in the classification of the crime, and mention other matters which have no relation to this case and which were afterwards abandoned by the pleadings filed in this court. It seems to have been the custom in matters of cassation to mention every section of the law which could possibly relate to the subject, out of abundant caution, because of the statutory rule that unless the particular title and section of the statute violated was pointed out the court would disregard the alleged error. (See Code of Criminal Procedure, art. 874.) This ancient practice appears to have been followed in taking this appeal.

In the meantime *habeas corpus* proceedings intervened on

En el intervalo se promovió procedimiento de *habeas corpus,* partiendo del fundamento de que al demandado le fué denegado recurso de apelación, no habiendo sido convicto de *felony* y que fué enviado inmediatamente á la cárcel. En vista de la causa de *habeas corpus* el demandado fué libertado por orden de esta Corte, puesto que tenía el derecho de interponer recurso de apelación contra la sentencia dictada por la Corte de Distrito, en dicho caso, á pesar de que era solamente un *misdemeanor* en vista de que la nueva ley, que no dá lugar á recursos en casos de *misdemeanor,* que fué establecida por la Asamblea Legislativa de 1 de Marzo de 1902, y designado "El Código de Enjuiciamiento Criminal", no era aplicable á actos cometidos con anterioridad á la misma, con perjuicio á cualesquiera de los derechos sustanciales del demandado. Por consiguiente el recurso fué admitido.

En el día 23 de Noviembre de 1903, los autos en el caso fueron elevados de la Corte de Distrito al Tribunal Supremo, y en 30 del mismo mes, el recurrente compareció mediante su abogado, el Sr. Juan de Guzman Benítez. El Pueblo de Puerto Rico también fué representado por el Ministerio Fiscal. En 14 de Diciembre de 1903 el abogado defensor del recurrente presentó un alegato á favor de su representado consignando detenidamente los fundamentos en que basa el recurso de apelación, los que son sustancialmente como sigue:

1. Que las frases del Artículo publicado en el periódico del cual se queja no constituyen el delito prescrito y castigado en el Artículo 265 del antíguo Código Penal, es decir, de calumnia, injuria é insulto á la Autoridad pública, á saber: la Corte de Distrito de San Juan, como se alega en la acusación del Fiscal y en la sentencia de la Corte.

2 Que la Corte de Distrito incurrió en error al negarle al demandado un juicio por jurado en cumplimiento de su demanda hecha por su abogado defensor en 19 de Octubre.

Estos son los únicos fundamentos alegados por el demandado y por lo que pide se revoque la sentencia. De lo que

the ground that defendant was denied an appeal not having been convicted of a felony, and he had been sent at once to jail. On the trial of the *habeas corpus* case the defendant was liberated by order of this court on the ground that he had a right to take an appeal from the judgment rendered by the district court in his case, notwithstanding that.it was only a misdemeanor, inasmuch as the new law denying appeals in misdemeanors, which was passed by the Legislature on the 1st day of March, 1902, and known as the Code of Criminal Procedure, did not apply to acts committed prior thereto, to the prejudice of any defendant's substantial rights. Accordingingly the appeal was admitted.

On the 23d of November, 1903, the record in the case was sent from the district court to the Supreme Court, and on the 30th of that month the appellant appeared herein by his counsel, Mr. Juan de Guzmán Benítez. The People of Porto Rico were also represented by the *Fiscal.* On the 14th of December, 1903, counsel for the appellant filed a pleading in his behalf setting out at length the grounds on which he bases his appeal, which are substantially as follows:

1. That the phrases in the article published in the newspaper and of which complaint is made do not constitute the crime prescribed and punished in article 265 of the old Penal Code; that is to say, of calumny, injury, and insult to public authority, to wit, the District Court of San Juan, as is alleged in the accusation of the *Fiscal* (district attorney) and in the judgment of the court.

2. That the district court erred in refusing the defendant a trial by jury in accordance with his demand made through counsel on the 19th of October.

These are the only grounds alleged by appellant for asking a reversal of the judgment. From all that appears in the

contienen los autos no aparece que ningún otro derecho que solicitara el procesado, ó que él podría utilizar, le fué denegado, ni con arreglo á la antigua ley de Enjuiciamiento Criminal, ni de acuerdo con la actual.

El Artículo 265 del antíguo Código Penal bajo el cual fué procesado, á la letra dice:

"Los que, hallándose un Ministro de la Corona ó una Autoridad en el ejercicio de sus funciones, ó con ocasión de éstas, los calumniaren, injuriaren, insultaren de hecho ó de palabra, fuera de su presencia ó en escrito, que no estuviera á ellos dirigido, serán castigados con la pena de arresto mayor''.

Ciertamente se cometió el delito que el estatuto se proponía corregir; y es bien claro que el objeto del artículo injurioso fué arrojar el descrédito sobre la Corte, poniéndola en evidencia ante el pueblo sobre cuyos derechos y libertades ella tiene que juzgar, y tendiendo de este modo á debilitar su autoridad. Es difícil entender de qué modo una persona razonable, que no esté interesada, puede leer el artículo editorial del cual se queja, sin encontrar que cae bajo las prescripciones de este estatuto. (Véase el caso de Miguel Vives Deyá, decidido en 23 de Mayo de 1895, y del cual se hace relación en 54 Jurisprudencia Criminal, p. 615.) Ciertamente las expresiones contenidas en dicho artículo tienen por objeto calumniar, injuriar é insultar á los Jueces de la Corte de Distrito de San Juan, y el hecho de que el citado artículo se refiere á una carta que aparece en el citado periódico de la misma fecha, no disminuye de manera alguna su carácter ofensivo. Los cargos no son tampoco de carácter tan general que puedan considerarse fuera de los términos del estatuto. Es posible que la ofensa imputada al procesado también incluya la falta de respeto y consideración debida á la Autoridad, según se consigna en el párrafo 5 del Artículo 597 del mismo Código, por el cual se prescribe una pena más ligera, pero eso no altera la criminalidad del hecho del cual se acusa al

record, the defendant was not denied any other right which he claimed, or to which he could possibly be entitled, either under the old or the new Code of Criminal Procedure.

Article 265 of the old Penal Code, under which this prosecution was conducted, reads as follows:

"Those who, while a minister of the Crown or an authority is in the exercise of his functions or on the occasion thereof, shall calumniate, outrage, or insult him by deed or word, outside his presence, or in a writing not addressed to him, shall be punished with the penalty of *arresto mayor*" (greater imprisonment).

The public wrong which the statute was designed to remedy was certainly accomplished; and the offensive article was clearly designed to bring a court of justice into disrepute among the people whose rights and liberties are subject to its adjudication, tending thus to a subversion of authority. It is difficult to see how any reasonable person, not personally interested, can read the editorial article complained of and not find it to fall within the provisions of this statute. (See the case of Miguel Vives Deyá, decided on the 23d of May 1895, and reported in 54 Criminal Jurisprudence, 615.) The language therein contained is certainly calculated to calumniate, outrage and insult the judges of the District Court of San Juan, and the fact that the editorial itself refers to a letter appearing in the same issue, does not detract in any way from its offensive character. Nor are the charges so general in their character as to take them outside of the terms of the statute. It may be that the offense imputed to the defendant also includes that of disrespect to the court set forth in the fifth paragraph of article 597 of the same Code, for which a lighter punishment is prescribed, but that does not alter the criminality of the act charged against the defendant. He may well be considered as guilty of both the crimes denounced by the law though he can only be convicted of the one with which

procesado. Bien puede considerarse culpable del delito y de la falta penados por la ley, aunque solamente puede ser convicto del que se le acusa. De la misma manera el delito de asesinato incluye un asalto simple, pero nadie por esa razón puede reclamar el derecho de ser procesado por la menor, y exonerado de la ofensa mayor.

En cuanto á habérsele denegado al demandado un juicio por jurado, basta decir que bajo la ley de jurados solamente aquellos *felonies* que se castigan con la pena de muerte, ó de presidio, pueden ser juzgados por jurado. Nadie tiene el derecho de ser juzgado por jurado cuando solamente se trata de un *misdemeanor* y el mero hecho que la Sección 246 del nuevo Código Penal y la 264 del nuevo Código de Enjuiciamiento Criminal, especifican que en todo caso de libelo el jurado determinará la ley y el derecho, no se opone á la ley anterior, ni aún siquiera la contradice, porque ahí solamente se dice que cuando se provee el jurado en un caso de libelo, el mismo tendrá "el derecho de determinar la ley y el derecho". Los beneficios de la ley de jurados no se han extendido á los casos de libelo, ó á ningún otro misdemeanor. En el caso de que este delito se calificara como un *felony,* entonces tales causas se podrían juzgar ante jurados. Pero en la actualidad la circunstancia que bajo el Código Penal los libelos no son *felonies* impide que tenga juicio por jurado un procesado que se acusa de libelo. Es por esta y otras razones, innecesario discutir la cuesión si *calumnia, injuria* é *insulto* son términos en el antíguo Código, que corresponden á *líbelo* en el Código moderno. Pero existe una gran diferencia entre los delitos que sería fácil de demostrar si la cuestión se discutiera.

Además, muy bien se ha dicho en argumento, por el Fiscal, que aún si el demandado hubiera tenido derecho al jurado, lo abandonó, y perdió su oportunidad de pedirlo, por no insistir al debido tiempo. Sin embargo, de la vista que

he is charged. In the same way murder includes a simple assault, but no one for that reason can claim to be prosecuted for the lesser and exonerated from the greater offense.

In regard to refusing the defendant a trial by jury, it is sufficient to say that in the jury law it is only cases involving felonies, for which the punishment prescribed is capital or imprisonment in the penitentiary, which may be tried before a jury. No one has the right to be tried by a jury when charged with a misdemeanor only, and the mere fact that section 246 of the new Penal Code and section 264 of the new Code of Criminal Procedure specify that in all cases of libel the jury shall determine the law and the fact, does not militate against the former law, nor even contradict it, because it is merely announced therein that whenever a jury may be provided for or allowed in a libel case, they shall "have the right to determine the law and the fact." The benefits of the jury law have not yet been extended to cases of libel or any other misdemeanor. If this crime should at any time be made a felony, then such cases could be tried before a jury. But now the circumstance that libels under the Penal Code are not felonies precludes a defendant charged with libel from having a jury trial. It is for this and other reasons unnecessary to discuss the question of whether *calumnia, injuria,* and *insulto* are terms of the ancient code which correspond with libel in the modern code. But there is a great difference between the crimes, which could be readily shown if a discussion should be pursued.

Moreover, it has been well said in argument by the *Fiscal* that, even if the defendant had been entitled to a jury, he waived his right and lost his opportunity of demanding one by not insisting on it at the proper time. However, in the view that

tomamos del caso, ni este hecho, ni el argumento que se funda en el mismo, es material.

El deber de esta Corte en el juicio de recursos criminales, bajo la ley moderna, está consignado en la Sección 362 del nuevo Código de Enjuiciamiento Criminal, que á la letra dice así:

"Sección 362.—Después de celebrada la vista de la apelación, la Corte Suprema debe dictar sentencia sin parar mientes en los errores ó defectos técnicos ó de forma, ó en excepciones que no afecten los derechos sustanciales de las partes"

Esta sección es idéntica con la 1258 del Código Penal de California, que ha sido interpretada en numerosos casos por el Tribunal Supremo de dicho Estado. En el caso del Pueblo contra Turley, 50 Cal., 471, la Corte Suprema de aquél Estado, al interpretar la mencionada sección, emplea las siguientes expresiones:

"A la verdad, despues de considerar atentamente el ingenioso argumento presentado á favor del detenido, nos vemos en la imposibilidad de descubrir razón alguna por la cual deberíamos alterar la sentencia dictada en la Corte inferior en este caso. Por las disposiciones del Código Penal (Sección 1258) estamos obligados á dictar sentencia sin atención á errores ó defectos técnicos ó excepciones, que no afectan los derechos sustanciales de las partes. Estamos seguros que en el juicio celebrado no se ha denegado ningún derecho sustancial del detenido".

Un error de procedimiento cometido por el Tribunal sentenciador no justifica la revocación de la sentencia, á no ser que el mismo perjudique los derechos sustanciales del demandado; é incumbe al acusado probar tal perjuicio.

Pueblo con. Murback, 64 Cal., 370; Bernett, *ex-parte,* 62 Cal., 528; Pueblo con. Smith, 59 Cal., 608; Pueblo con. Nelson, 56 Cal., 82; Pueblo con. Turley, 50 Cal., 471; Pueblo con. Brotherton, 47 Cal., 404.

we take of this case neither this fact nor the argument founded thereon is material.

The duty of this court on the trial of criminal appeals under the modern law is set out in section 362 of the new Code of Criminal Procedure, which reads as follows:

"Section 362.—After hearing the appeal, the Supreme Court must give judgment without regard to technical errors or defects, or to exceptions, which do not affect the substantial rights of the parties."

This section is identical with section 1258 of the Penal Code of California, which has been construed in numerous cases by the Supreme Court of that State. In the case of the *People* v. *Turley,* 50 Cal. 471, the Supreme Court of that State, in construing the section referred to, uses the following language:

"In fact, after attentive consideration of the ingenious and labored argument submitted for the prisoner, we are unable to discover any reason why we should disturb the judgment rendered in this case. By the provisions of he Penal Code (sec. 1258), we must give judgment without regard to technical errors or defects, or exceptions, which do not affect the substantial rights of the parties. We are satisfied that no substantial right of the prisoner has been interfered with in the trial which has been had."

An error in procedure committed by the trial court does not justify a reversal of the judgment unless it produced an injury to the substantial rights of the defendant; and the burden of showing such an injury is placed upon his shoulders. (*People* v. *Murback,* 54 Cal. 370; *Bernet, Ex parte,* 62 Cal. 524; *People* v. *Smith,* 59 Cal. 608; *People* v. *Nelson,* 56 Cal. 77; *People* v. *Turley,* 50 Cal. 469; *People* v. *Brotherton,* 47 Cal. 404.)

Y, además, según la Ley de Enjuiciamiento Criminal
Española que estaba vigente en cuanto á todo hecho cometido
con anterioridad al día 1 de Julio de 1902, los errores ó de-
fectos en el procedimiento podrán dar lugar al recurso de
casación por quebrantamiento de forma y dichos errores
están taxativamente comprendidos en los Artículos 911 y
912 de dicha ley, bastando su simple lectura para comprender
que tales errores habían de ser sustanciales, como la denega-
toria de diligencias de pruebas ó la falta de citación para el
juicio, en cuyos casos pueden sintetizarse todos los enumera-
dos en el Artículo 911; mereciendo igual calificación de sus-
tanciales, los del artículo siguiente; y que el recurso de casa-
ción por quebrantamiento de forma solo procedía en los
casos que mencionan los dos artículos citados, lo declaró el
Tribunal Supremo de Madrid, entre otras sentencias, en la de
Ramón Alvarez Lorenzo, dictada en 22 de Marzo de 1895, 54
Jurisprudencia Criminal, 620.   Por consiguiente, la juris-
prudencia americana y la española están en su esencia con-
formes.

Por lo tanto, siguiendo el antíguo Código de Enjuicia-
miento Criminal, bajo el cual este caso propiamente está con-
siderado, habiéndose cometido la ofensa con anterioridad al
1 de Julio de 1902, no se podría considerar nada á favor del
recurrente, sino los dos extremos consignados en el alegato
presentado por su abogado defensor en esta Corte, en 14 de
Diciembre de 1903, que anteriormente se han consignado en
la presente.

El Artículo 874 del Código de Enjuiciamiento Criminal
Español, en su primer párrafo, á la letra dice así:

"Este recurso se interpondrá en escrito firmado por abogado y
procurador autorizado con poder bastante, sin que en ningún caso
pueda admitirse la protesta de presentarlo, y en dicho escrito se con-
signarán en párrafos numerados, con la mayor concisión y claridad,
sus fundamentos, y se citarán el artículo de la ley que lo autorice y
las leyes que se supongan infringidas".

And, moreover, according to the Spanish Law of Criminal Procedure, which was in full force as to all acts committed prior to the 1st day of July, 1902, the errors or defects in procedure may give occasion for an appeal in cassation for breach of form, and said errors are by their terms comprised in articles 911 and 912 of said Law, a simple reading of the same being sufficient in order to enable one to understand that such errors must be substantial ones, such as the refusal to hear evidence, or the omission of the citation for trial; among which cases may be comprised all of those that are enumerated in article 911; those of the following article deserving the same classification of substantial ones, and that an appeal in cassation for breach of form only lay in the cases mentioned in the two articles cited, was declared by the Supreme Court of Madrid, among other decisions, in that of the case of Román Alvarez Lorenzo, decided on the 22d of May, 1895, and reported in 54 Criminal Jurisprudence, 620. Thus it is seen that the American and Spanish jurisprudence substantially agree in these particulars.

Accordingly, following the ancient Code of Criminal Procedure, under which this case is properly considered, the offense charged having taken place prior to the 1st of July, 1902, nothing could be considered on behalf of the appellant except the two points set forth in the pleading filed by his counsel in this court on the 14th of December, 1903, and hereinbefore substantially set out.

Article No. 874 of the Spanish Code of Criminal Procedure in its first paragraph reads:

"This appeal shall be interposed in writing signed by an attorney and solicitor having authority by virtue of a sufficient power, a promise to present it not being admitted in any case, and there shall be stated in said instrument, in numbered paragraphs, with the greatest clearness and conciseness, the grounds therefor; the article of the law authorizing it and the laws which are supposed to have been violated shall be cited."

Bajo este artículo es claro que el Tribunal Supremo queda limitado á los fundamentos del recurso que cite el demandado, y éstos se han considerado ciudadosamente en la anterior discusión.

Pero no importa que este caso se considere bajo la antígua ley de procedimiento, ó bajo el Código actual; el resultado viene á ser el mismo. El demandado no tiene fundamento sostenible sobre el cual puede basarse la revocación de la sentencia.

Ninguna persona razonable puede leer los autos en el presente caso y tener la menor duda de la culpabilidad del procesado. Hasta ahora toda discusión ha sido solamente en cuanto á las cuestiones de forma. Es verdad que éstas son materias importantes, y todo acusado tiene el derecho de insistir en ellas, como ha hecho el recurrente. Pero será bien observar, con relación al asunto, que el recurrente en el presente caso ha sido juzgado dos veces por la Corte de Distrito, y sucede que dicha Corte, en ambas ocasiones, fué compuesta de tres magistrados distintos. Fué declarado culpable en ambos juicios, y en el primero fué sentenciado á cuatro meses y un día de arresto mayor, y en el segundo fué sentenciado á dos meses y un día. La primera sentencia fué revocada por el Tribunal Supremo solamente por motivos técnicos, estando de acuerdo los cinco Jueces del mismo, y el presente caso, en grado de apelación, está otra vez pendiente de la resolución de este Tribunal, sobre una cuestión semejante. En la presente causa el reo se ha sentenciado, por ser culpable del delito de injurias y calumnias, definido en el Artículo 265 del Código Penal Español, á la pena de arresto mayor, cuya duración es de un mes y un día á seis meses, según el Artículo 27; y como realizó el delito por medio de la imprenta, lo que en el caso de que se trata constituye una circunstancia agravante de responsabilidad criminal, comprendida en el número 6 del Artículo 10, es claro que la pena ha debido imponerse al acusado en su grado máximo, con

This article clearly confines the Supreme Court to grounds of appeal on which the counsel for appellant relies, and these have been considered carefully in the foregoing discussion.

Then it matters not whether this case may be considered under the ancient law of procedure, or under the modern code; the result is the same. The defendant has no tenable ground on which to base a reversal of the judgment.

No reasonable person can read the record in this case and have the least doubt of the guilt of the defendant. All controversies have heretofore been on questions of procedure alone. These are important matters, it is true, and every accused person has a right to insist upon them as the appellant has done. But it may be well to observe in this connection that the appellant in this case has been twice tried by the district court, and it so happens that the court was composed of three different judges on each occasion. He was found guilty on both trials, and on the first was sentenced to four months and one day imprisonment, and on the second to two months and one day. The first judgment was reversed by the Supreme Court, the five justices thereof concurring, solely on technical grounds, and this case is on a similar question again before this court on appeal. In this case the defendant has had his punishment fixed for being guilty of the crime of calumnies and injuries, as defined in article 265 of the Spanish Penal Code, and he has thereby become liable to the punishment of greater imprisonment, the duration of which is from one month and one day to six months, in accordance with article 27. And as the crime was committed through the press, which in the present case constitutes an aggravating circumstance of criminal responsibility, prescribed in the sixth paragraph of article 10, it is clear that the punishment could having been imposed on the accused in its maximum degree, in accordance with the third subdivision of article 80,

arreglo á la disposición 3ª. del Artículo 80, cuyo grado
máximo, dentro del prudente arbitrio judicial, es de cuatro
meses y un día á seis meses, según la tabla demostrativa del
Artículo 95.  Empero, como el recurso ha sido interpuesto
por Bird, el demandado, y no por el Ministerio Fiscal, no cabe
agravar la situación de aquél, imponiéndole pena superior á
la que ha sido impuesta por la Corte sentenciadora, aún si
este Tribunal se considerara autorizado á aumentar la pena
impuesta por dicha Corte.

Está bien establecido por la jurisprudencia antes aplicada
y por el Código nuevo, así como por el antíguo, que el deman-
dado en un caso de *misdemeanor,* como el presente, no puede
reclamar una revocación de la sentencia, teniendo como fun-
damento meramente las irreglaridades de las cuales no se
quejó en el acto, y á las cuales no se tomó excepción, ni se
presentó en esta Corte.  No obstante ésto, según la nueva
ley que gobierna á este Tribunal en casos de apelación, hemos
examinado cuidadosamente los autos todos, para determinar
si habría alguna cuestión de hecho ó de derecho que resul-
taría ventajosa para el acusado, sobre la cual se podría fun-
dar la revocación de la sentencia.  Tal pesquisa se ha hecho
sin resultado.  Los autos no demuestran ninguna instancia
en que algún derecho ó privilegio del acusado ha sido vio-
lado, y no hay procedimiento ninguno de que con razón puede
quejarse.

Aunque el recurso no se funda en el número 1 del Artículo
912 de la Ley de Enjuiciamiento Criminal Española, tampoco
procedería por tal fundamento, pues de la sentencia se des-
prende, con bastante claridad y precisión, cuales son los
hechos que el Tribunal sentenciador estimó probados, por
más que no lo dijo de modo expreso y terminante.

En vista de que no se ha cometido ningún error material
en la Corte de Distrito, con perjuicio del recurrente en el
juicio del presente caso, y como la sentencia dictada contra

which maximum degree, within prudent judicial discretion, is from four months and one day to six months, in accordance with the demonstrative table set forth in article 95 of the same Code. However, as the appeal has been taken by Bird, the defendant, and not by the *Fiscal* (district attorney), the situation of the appellant should not be made more serious by the imposition of a greater punishment than that which has been adjudged by the trial court, even if this court should be deemed to be authorized to increase the penalty fixed by the court below.

It is well established in criminal trials, by the jurisprudence applying above, and by the new code as well as by the old, that a defendant in a misdemeanor case, such as the one at bar, cannot claim a reversal of the judgment on the ground of mere irregularities of which no complaint was made at the time, and to which no exception was taken and none presented to this court. Notwithstanding this, in accordance with the new law governing this court in cases of appeal, we have carefully examined the whole record in order to ascertain if there might be any question of law or of fact beneficial to the accused on which a reversal could be predicated. Such search has been fruitless. The record shows no instance in which any right or privilege of the accused has been violated, and there is no proceeding whatever of which he can reasonably complain.

Although the appeal is not based on the first paragraph of article 912 of the Spanish Law of Criminal Procedure, nor would the same lie on such grounds, yet it may be understood from the sentence with sufficient clearness and precision what were the facts which the trial court deemed proven, even though not expressed affirmatively and conclusively.

Inasmuch as no material error has been committed by the district court to the prejudice of the appellant, in the trial of this case, and the judgment rendered against him is just and correct in every particular, the same should be af-

el mismo es justa y correcta en todo sentido, la misma debe confirmarse, con costas; lo que se hará.

*Resuelto de Conformidad.*

Jueces concurrentes: Sres. Presidente Quiñones, y Asociados Hernández y Figueras.

El Juez Asociado Sr. Sulzbacher no formó Tribunal en la vista de esta causa.

---

EL PUEBLO *v.* DIAZ (*a.*) MARTILLO.

APELACIÓN procedente de la Corte de Distrito de Humacao.

No. 3.—Resuelto en Febrero 27, 1904.

PLIEGO DE EXCEPCIONES.—El pliego de excepciones debe contener solamente aquella parte de la prueba que sea necesaria para exponer los puntos de derecho en que se funden las excepciones, y el Juez del inferior debe eliminar todas las materias que no sean propias de dicho pliego.

ID.—APELACION.—PRUEBAS.—VEREDICTO.—El Tribunal Supremo no puede revocar un fallo por virtud de apelación fundado en que el veredicto es contrario á derecho ó á las pruebas cuando no se hubiere sometido á su consideración toda la prueba practicada en el juicio, ni se hubieren planteado en el pliego de excepciones las cuestiones de derecho surgidas durante el juicio; en tal caso hay que presumir que el veredicto ha sido pronunciado con arreglo á derecho y á las pruebas practicadas.

NUEVO JUICIO.—DESCUBRIMIENTO DE NUEVAS PRUEBAS.—Para que una moción de nuevo juicio, fundada en el descubrimiento de nuevas pruebas, pueda prosperar, no solamente es necesario probar bajo juramento que se practicaron las diligencias necesarias para conseguir dichas pruebas antes del juicio, y que fueron descubiertas con posterioridad al mismo, sino que hay que mostrar, además, cuales fueran las diligencias practicadas, á fín de que el Tribunal pueda apreciar si se desplegó la mayor actividad posible para el descubrimiento de tales pruebas.

ID.—Si al hacer una moción solicitando nuevo juicio, fundada en el descubrimiento de nuevas pruebas, se propusieran entre éstas, declaraciones testificales, es necesario demostrar la razón que hubiera para no proponer tales declaraciones en el juicio original y la manera en que la parte vino á descubrir que tales declaraciones podían ser favorables á su causa.

SOBRESEIMIENTO DE LA CAUSA.—Cuando en una causa criminal no se celebrare el juicio dentro de ciento veinte días á contar desde la presentación de la acusación, y hubiere para ello justa causa, no procederá decretar el sobre-

firmed, with costs; which will be accordingly done. It is so decided.

Chief Justice Quiñones and Justices Hernández and Figueras concurred.

Mr. Justice Sulzbacher did not sit at the hearing of this case.